So the next case to be argued is Wandering Dago Inc. v. Destito, No. 16-622. May it please the Court, George Carpinello, Boies, Shiller, and Flexner, for the plaintiff, Your Honors. Your Honors, this case involves a quintessential public forum, a park in the center of the city of Albany that has all the attributes of a park, not only that it is freely open for pedestrians to come and congregate and eat and discuss, it's used as a place of public protest, and it is adjacent to the major government buildings in the city of Albany. All those attributes make it a quintessential public forum. But your adversary would argue that that's not the forum that's being addressed here, that the forum is the summer lunch program. So why is it that the forum is the plaza as opposed to the summer lunch program? And specifically under Cornelius. Yes, Your Honors. First of all, I might note that the state never made that argument. The district court in the first instance made that argument on the motion to dismiss, and the state then adopted that position. Well, but this was the motion for summary judgment. After the motion to dismiss. The state got the idea that there was no argument, and it was made in summary judgments. And I think, Your Honors, that the state can never convert what is a quintessential public forum by its own ipsy-dixy. And that's exactly what the state is doing here. And I think it's important that the state never took the position. So could the state not run a children's concert program in a part of the plaza in the summer and have a series of three concerts in which they had programs oriented towards young kids and didn't include rappers who were rapping violent lyrics and so on? Absolutely. Could they not do that? Absolutely. And we never take the position that publicly sponsored concerts, for example, are a limited public forum. But this permit to allow food trucks on the park is no different than having a pretzel vendor on 42nd Street. Why isn't it different? I mean, why isn't this a situation in which they were doing a program which is akin to the program of the children's concerts? Because all it was was licensing food vendors to place their truck on the plaza. And if you go to 42nd Street and you find a pretzel van there, he's got to get a permit from the city of New York. If the city of New York said, we're now going to call our permitting program for vendors on the street, the New York City Lunch Program, the city can, by ipsy-dixit, say, we're now in a state program. Why is that so? I mean, the city was advertising the availability of this, which substituted for a prior actual subcontract with Sodexo. There were a limited number of spaces. The city was providing the water and electric hookups. They were making it known to the state employees and to tourists and kind of wrapping it in the city's welcome to Albany in this limited portion of the mall. Why isn't that quite different from just awarding permits to sites on 42nd Street? Because the fact that the state would allow hookups doesn't change the nature that these are simply vendors on the mall. And incidentally, they're not perceived, unlike a children's program, it's not perceived by the public to be a, quote, state-sponsored program. It's perceived to be vendors. If you walk off... What was the evidence to that effect about what the public perception was? I think just as a matter of common sense, as the court says in all the other cases, for example, in the Monument case. There was no evidence about how the public actually perceived the program. Either way. Either way. In terms of the advertisements or whether there were banners, whether they were grouped in a particular area that was kind of roped off or in any way. Right. It wasn't roped off as if it's a children's program. It was not... Does the record show what portion of the plaza it occupied? That it being the collection of trucks? I don't believe it does. They were simply placed in a place convenient so that people could come along. In terms of speech and protecting speech, what does saying to people, even vendors, that you are to behave in a way that is only content rather than viewpoint. Whether it was or not is another issue, but only content. How does that really diminish speech in this public place? I mean, you know, the question of what is or is not a public forum has to do with the right of people to speak. And what is it that really limits speech to say to these vendors, okay, what is going on here is something more limited. It has nothing to do with this plaza as a place to argue, discuss, protest. I'm not sure I understand your question, Your Honor, but I think that if... That's because I was your teacher. And I was as tongue-tied as I was in law school. If, for example, the state didn't say we're going to call it a program and the state said we're going to license vendors on the mall, just as the city of Albany licensed vendors around the corner on State Street, and they had the vendors out there and they said, you, you vendor, I don't like Wandering Dago, get off of here. I don't think there would be any question that that would violate the First Amendment because they're making a statement in a quintessential public place. And I think the fact that the state called it a program does not change that. In addition, the state never considered it a publicly sponsored program because they cited regulations, the actual application, and the denial cites a regulation that deals with the public's use of state space, not state-sponsored programs. I understand. I am not speaking about this as state speech, that other ground of the district court. I have much more problem with that. I'm still focusing on whether this is a limited public forum. And I do want to emphasize that even if it were a limited public forum, you're not entitled to viewpoint discrimination. And it's unquestionable that this is viewpoint discrimination. That's a question I want to ask. I mean, is the discrimination, is it viewpoint because it says that derogatory terms cannot be used while positive terms can be used like Polish pantry? Or is the question of viewpoint whether you can use a term like that positively, like queer has come to be used, but can't use it negatively. Or it's not viewpoint when you can use it both ways. What's viewpoint? To go to part of the menu, if you use guido as being macho, that's okay. But if you use guido as being mafioso, that would be not allowed. And that's what makes it viewpoint. No, I think, I think, I think clearly, first of all, there's no, there's no policy here. It's Mr. Robito looking, someone brought the application to him and Mr. Robito said. That's a question, that's another question. Right. But to answer your question, we don't know what the standard is. You can use it positively ethnically, but not positively ethnically. Even if that were the standard. We do have something on it in that your client does describe it as a positive use. Clearly. Yeah. He has to do that. Yeah. Well, it's interesting. So that suggests it isn't only negative that is forbidden, but positive as well. Right. And I think, I think the Tam case, the Federal Circuit decision in Tam, and the questioning in the Supreme Court in Tam indicates that it's, that the, it shouldn't matter whether the group wants to call themselves slants because they're positive or negative. And when, when a bureaucrat says we don't like slants because we think it's offensive to a certain group of people, that's clearly viewpoint discrimination. I see my time is. Let me just ask you a quick question. So what is, if, if, is it your position that if we find the forum to be the plaza, a public forum, do we apply intermediate scrutiny of Central Hudson because this is commercial speech or do we have to apply a strict scrutiny? Well, actually the case law is not clear on that, Your Honor. We said at the very least it's got, you've got to apply Central Hudson. But I, I, I submit that the, both the court, the decisions in this court and in the Supreme Court are vague with regard to that. But in any case, if it's a quintessential public forum, they can't meet either the strict scrutiny test or the Central Hudson test, and they don't even try. And even if it is a limited public forum, as the state argues, I don't think there's any question that it's government speech. But even if it's a limited public forum, it's unquestionable that it's got to be reasonable. And there's no basis for a reasonable test here, as the Third Circuit said in the recent NAACP versus Philadelphia case. But it's clearly viewpoint discrimination. And if I might add also, even if, even if it were a limited public forum, you have to have a written, reasonable, articulable standard, which they do not have here. They've got a guy who says, I apply family values as I see it, when I see it. And in this case, I saw it, and I found it to be offensive. Let me ask another question. So the litigation has to do with what happened in 2013 and 2014. And I understand that the standards have since changed. It's not clear to me exactly what remedy you're seeking. The damages element has been dropped or settled, I understand. And you're looking for some form of injunctive relief. What would that relief look like? We want a permanent injunction that they cannot ban us from the plaza based upon our name. If we applied in two... So if they had stated a policy of precluding participation by any organization related that made ethnic slurs or that were sexually discriminatory or discriminatory in some other illegal way, you think that would be, we would need to strike that down and whatever the current standards are, even though that would be more specific. And if they had additional process, for example, if they cured some of the ills you've complained about, that indeterminacy and so on, that still wouldn't be sufficient. You want to kind of... Not in our... In other words, they might get rid of one issue by having a clearly written, articulable standard with a right of review as opposed to the ad hoc decision made at the lunch table by Mr. Rubito. Wasn't there a policy, though, that he invoked and that the district court relied on, that all vendors are expected to conduct themselves with courtesy and orderly manner and precluded name-calling, profane language, fighting words? Wasn't that the policy? That was written in the application. We think that clearly was directed to conduct personal to person conduct on the mall, but even that, we argue, is unconstitutionally vague. And if I may, Your Honor, he said he didn't rely on that. He said what he did was, I asked him, what standard did you rely on in rejecting this? He said, I just, I saw it, it's offensive, and I rejected it. I want to go back to the presider's question. That is, if we assume with you that this was unguided discretion at the time it was used, and after, instead, standards are set up which are sufficient, if that's the only issue, I know you're making other issues, but if that's the only issue, then, if at the time, too, now, there are standards that are sufficient, can you get an injunction or declaratory judgment? Or is that something that we no longer are, will normally give because now there are adequate standards? And, again, I'm not saying that's the only issue. I'm not saying that the standards now are adequate, but the question is. Please take your time in responding. We'll give the State additional time as well. We'd like to explore this with you. If I lose on all the other issues, and my only issue is the vagueness and arbitrariness of the standards, and there are proper standards, and we don't know what they are, but if they articulate proper standards that don't violate any of the other rules, then, at that point, if there were such, and there are not today, then we would not be entitled to injunctive relief if we were evaluated under those standards. But that's not where we are because. Does the record show what the standard is today? I believe it's exactly the same as it was when we brought the case. There's no change in. It's not been altered. No. No. There's a new set of rules to apply to get on the mall, which we met. There was a new set of rules in 2014, not with regard to speech, and we met, this record shows we met every single one of them, and then the application was rejected solely on the grounds of the name Wandering Dago. That's undisputed in the record. I believe that they have issued new rules that say, in the writing, family friendly. Now, whether that's adequate and whether that, that is not in the record, but it is findable online, and so the question is, can we take judicial notice of it or not? I don't know. I don't know if we can take judicial notice, and I don't know if family friendly would be specific enough, but that's, I think, the basis of this information. I don't think it's in the record. It's not in the record, and family friendly, I think, is clearly vague and unconstitutional, and that would not be enough. Until this case, family friendly was in the mind of Mr. Rubito, and they built a whole post hoc rationalization based upon the fact that Mr. Rubito made a decision to prohibit a particular doll, or he made the decision that somebody couldn't use the n-word at a concert. To go back to something earlier, the question of whether Guido is family friendly or not is certainly not a clear issue. Thank you very much. Thank you, Your Honor. Wait, did you have a question? I just had one factual question. In parts of the record, it talks about the fact that it's not just the name of the entity, but the name of the menu, the other names of the sandwiches. Am I correct that the sandwiches no longer bear those names, which were the Pollock, the McN Cheese? I don't think the record's clear on that. I think the sandwiches have clearly changed over time, but the testimony by Ms. Lodgedyce was that we perceive ourselves as working class Italians, and people came up to us, liked the name, and suggested other names which were ethnically related, and that goes with our theme, and we adopted that, and we did have those names, and Rubito testified. I looked at their menu online. I didn't like the names of the sandwiches either, and that's why I told them they couldn't participate in the program. But those sandwich names have been changed or remain the same? I think the record is unclear on that, Your Honor. I apologize. Very good. You'll have a few minutes for a rebuttal. Thank you, Your Honor. Ms. Chaudhry. May it please the Court, Zainab Chaudhry for the State. Your Honors, I want to come back to the last point we were discussing, but I want to start by saying the State has the right, in its proprietary capacity, to decide who it will do business with. This is not a case like a vendor on 42nd Street inconsistent with the Constitution. It may choose to do business with corporations whose products do not reflect or contain derogatory... I'm sorry. I need to interrupt. I don't understand this as doing business or subcontracting. I saw this as a permitting regime. I mean, after all, the applicants were paying $1,500 to participate and to just be given space on the public plaza to sell sandwiches. In what way is that doing business? Your Honors, the reason it's not a permitting regime is because the State is not acting in its regulatory capacity to license Wandering Dago to have a permit to do business in the State. They are licensed under the Department of State to conduct business under that corporate name anywhere in the State. And plaintiffs have seized upon the word permit, but if you look at the record, there's a contractual agreement. They are subcontracting out to provide food services. The State does not run a State cafeteria. I need to pursue that further. Usually in the subcontracting arrangement, the contractor is paying to receive services. Here, it's the subcontractor who's paying for the opportunity to provide services to the public and is not receiving money from the State at all. Why is that subcontracting? It's subcontracting because the State is authorized to provide food service for plaza employees and visitors. Let me put this in a different way. Suppose in this context, the State chose in this context, the one that the presider has described, the State chose not to deal with somebody because they were Jewish or Italian or Muslims. Would that be all right because this was a contracting in this context? Would that be all right? No, Your Honor, certainly not. And then if they are doing it because these people are exercising their free speech, does that make it all right because they don't like the speech of these people? It's not that they don't. I think you have many strong arguments, but I must say that going down this line seems to me to be going down a line that is quite weak. Well, Your Honor, what I only meant to say is that the State is acting in its proprietary capacity in which this Court and Supreme Court has said when the State is acting as a proprietor, we're not licensing them generally to do business in the State, that that is a nonpublic forum. The plaintiff only sought and applied for access to the program. No one was prohibiting them from — Let me interrupt again. But this had to do with presence on the plaza that is used for all kinds of public purposes throughout the year and that is surrounded by government buildings, which seems to be the quintessential public forum. I need help getting from the plaza as an open place where people congregate and express views and where the interests in free speech are strongest to reducing that to an exercise of the government's proprietary authority in a contracting relationship. Well, let me start with the Cornelius case, which said that we look to, in determining the forum, we have a tailored approach. We take a tailored approach. We look to what specific access is sought. They sought access only to sell food. The members of the public are not — They sought access to sell that food in the plaza. That's where they wanted to be. Their trucks were there in the plaza in an area which has traditionally been used for speech. It's artificial to say they were really seeking access to a program in this context, isn't it? No, Your Honor, because members of the public, no member of the public is allowed to drive a car, a cart, a truck of any sort and start selling wares on the plaza. It is still part of a government complex and the Office of General Services manages that type of activity. As far as traditional public activity, no one is saying people cannot walk across the plaza wearing a T-shirt or carrying a sign that advertises Wandering Dago. But that's not what was happening here. And also the plaza itself is not typically like other village squares and parks. It's part of a government building complex, yes. There is some public space available, yes. But access is still limited and controlled by the state to a great degree. And in this case — Do people not congregate there and demonstrate? There are some demonstrations there. Typically the demonstrations are held in the parks next to the Capitol. But again, the plaintiffs were not seeking access to conduct that kind of traditional expressive activity. They were seeking access to come and sell their food out of their truck. They agree that the sole purpose of the program was to provide lunch services. And I don't know if members of the panel are familiar with the plaza, but underneath the plaza in the concourse level we also have several vendors who are leasing space to provide food services. This is just an extension of that for the few weeks in the summer so patrons can enjoy the outdoors. Well, but the fact that you may have a restaurant and then you spill over into a public place doesn't tell you very much. I mean, the question of whether this is a limited public forum or a full public forum is not going to be solved by whether there is a limited public forum next door. Can you address the question of viewpoint versus content even if this is limited? Yes, Your Honor. And then also take time to address the question of the level of discretion that has been given to the decision maker. Yes, certainly, Your Honor. First, as to, we argue of course that this is a non-public forum as opposed to a limited public forum, but the same test would apply. As to viewpoint neutrality, first of all, putting aside the fact that although they've manufactured a viewpoint for the appeal, that is not what they were seeking to do. Admittedly, in our brief we cite to several places of the record where the plaintiff said they were not trying to put forth a viewpoint. But in any event, in a non-public forum, restrictions based on content are permissible. And in this case, we have the state prohibiting all ethnic slurs as a category of speech. Not some slurs are prohibited and others are allowed. Where is the policy that talked about ethnic slurs? What policy do you refer to? The policy is, there are written guidelines, of course, even prior to 2014. And there has also been a long-standing, overarching policy that has been applied to previous events by the state. The record contains those examples. We highlight them in our brief. The written rules for vendor participation prohibit profane language, harassment, name-calling. What are ethnic slurs? What ethnic slurs are family-friendly and what are not? Well, no ethnic slurs would be family-friendly. Is widow family-friendly? That is being treated as an ethnic slur. I mean, that specifically is being treated as an ethnic slur in the menu. There is discussion of it as being, and there are contexts in which it has been used. Now, is that or is that something which the decision-maker can make in that as to whether that particular, I mean, you know, it isn't just, even if you're talking, I mean, how much decision is there as to what is an ethnic slur? I think it's obvious to reasonable people what constitute ethnic slurs. Their menu contained and still does contain items with those names. Well, now, you know, ethnic and other, is queer now an ethnic slur? Or not an ethnic, but a prohibited thing? Is, I mean, you know, it's very hard to know these things and the positive and negative thing is very interesting. It is, do you prohibit Huckleberry Finn because it uses the N word, vote red altogether, it is meant to be positive, and not prohibit, or not prohibit Huckleberry Finn, which is family-friendly, after all, but do prohibit the N word? I mean, the question of positive, negative, and prohibition in general, and what is an ethnic slur strikes me as being anything but easy. Well, that could be true, Your Honor, but in this case, all ethnic slurs are prohibited, whether it's the N word, whether it's Wandering Dago, whether it's any other slur that someone might think of. What is a slur? Is guido a slur? Your Honor, I don't want to say your name is a slur, but as it was used in the menu... Look, you're perfectly free to say so if it is clear that something like that is. It has previously been used as a slur. Is el guapo a slur? Knowing that guapo is a slur, but is el guapo, which was the original Arab word which gets converted because G, U, and W often get changed into each other, usually the other way around, is el guapo a slur because guap is one? Your Honor, I think it would be obvious that certain terms are ethnic slurs and the state is prohibiting all of them from its program. It's obvious to whom? To someone when they see it? Is that like pornography, that when I see it, I know it? Certainly not, Your Honor. Didn't the fellow have to look it up? He wasn't sure, right? He did go to do a search to make sure of his understanding of the term. He did have a personally offensive reaction to it, but he was not acting on his own whim and his own personal feeling about this. He's an official of OGS who was involved in this program. He knew the family-friendly policy that the state had had over years. For example, the record contains evidence of black-faced figurines being permitted, a performer who used the N-word being taken off the stage at a show. So this wasn't a policy that came out of nowhere. Anytime there was a state-sponsored event or program, these policies are overarching. And as to this issue, which is tying into the unbridled discretion, at the threshold, we believe the district court correctly determined that that doctrine of prior restraint doesn't apply here because the forum was not open to facilitate expressive activity. We're not saying the state can go into a park or any place else. That's a quintessential public forum. Well, the district court found it in speech, though. There was no question the district court concluded that the name of the food vendor was, in fact, speech. Yes, but the Lakewood line of cases talks about the unbridled discretion doctrine being applicable when there's an allegedly standard list licensing scheme that has a close enough nexus to expression or to conduct commonly associated with expression. And here we're really talking about this was facilitated to open a lunch program, not to take traditional expressive activity, cabinet into a program in an unconstitutional manner. But even assuming the doctrine applied, the decision was made with written policy and consistently applied policy, which does not necessarily have to be written down. Can you describe the written policies? Yes. The written rules for vendor participation in this program, for example, they're on 403 and following of the appendix. They prohibit harassment, name-calling, profane language. They're attached to the application. They're part of the contract. There are also written rules for vendors that have... I want to know the ones that are relevant to this issue. And you said harassment, name-calling, and what else? Profane language. Profane language. How are these things, harassment, name-calling, name-calling is the closest, and profane language. It's not profane language.  Obviously, they called anything they didn't like obscene, but that doesn't really help much. So let name-calling... What is it in the guidelines that speak to ethnic slurs? Was there a guideline that said that ethnic slurs, positive or negative, are prohibited? It did not say in those expressed terms ethnic slurs are prohibited. Is there any regulation that refers to ethnic slurs? Ethnic slur is not a term that's used. Then or now? Yes, both, as far as I'm aware. The district court considered it to be profane language. Yes, and other courts have held that it either fits within one or both, name-calling or profane language. And really, no reasonable persons could disagree that slurs fall within the type of language that would be not fitting within a family-friendly environment or an environment that's comfortable for the diverse population that traverses and works at the plaza. And if I could just touch on the remedy, I'm really not sure how much time I have left. You should feel free to answer the question. In terms of the remedy, if the court finds that there's not enough standards to guide the discretion in these circumstances, the remedy is not an order directing the plaintiff's truck to participate in the program. Because a challenge based, a facial challenge, rather, to a prior restraint under this unbridled discretion doctrine, it would mean the entire program is constitutionally infirm. And so nobody can have a permit to vend under that program. It would not allow a permit to be issued for plaintiffs. But the whole program would have to be invalidated until it was redone to satisfy constitutional standards. Why don't you go ahead and wrap up then? Okay. I just would like to emphasize again that this is not the state just trying to prohibit the expression of ethnic slurs generally or controversial language. But in the context of our program, where we're acting in our proprietary capacity, we want to decide who we're doing business with, and the whole view of that from the public is that this is a state program. It's advertised as such on closed-circuit television throughout the plaza, through emails. But that, you are saying that in any event, this is very different from the Tam case before the Supreme Court, because in the Tam case, it is whether the state allows certain things to be given a certain protection, trademarks and so on. And that's more akin to the state prohibiting the use of ethnic slurs. Your Honor, we do agree that the Tam case does not apply here because the government was acting as a regulator to prohibit receiving trademark protection at all. Yes. Yes. But in this case, they are authorized to do business here and to say they're Wandering Dago and do their truck business. But they just can't say, this is Wandering Dago brought to you with the support and endorsement as a contractor of the New York State government. Go ahead, please. Go ahead. I'm sorry. Go ahead, Judge. Are you pressing the point that the district court made that this is government speech, or are you not relying on that? We are relying on that, Your Honor. We did raise that in the earlier stages of the litigation. You didn't raise it at the summary judgment motion. No, it was raised in our amended answer and at the motion to dismiss stage, at which time the district judge clearly indicated her intent to analyze this under the forum analysis for private speech, so the parties naturally focused their argument on that. But we believe the government's right to choose its own message includes a right to decline to speak a message, in this case, the slurs. Let me ask the same thing about the employer-contractor. Was that part raised at summary judgment, or was that like the government's speech, raised before but not at summary judgment? No, Your Honor. The third alternative rationale put forth by the district court was not raised by the state at any time prior. And to make sure that I understand. Yes. You're saying that the state sponsorship of this program is comprised of providing electric and water hookups and the application process, receiving the $1,500 fee, and advertising on closed-circuit TV. Is that right? And I guess there's an e-mail message that goes out. Well, yes. Is there anything in addition to that? There's the general control of the program, which is completely in the state's... What is there in addition to what I've identified? For example, they must be located on a very particular spot of the plaza that is designated for the vendors. They must only be there at certain times of the day or on certain days of the week. They must include the entirety of the season. Those are requirements, but I don't see that as part of a kind of public face-to-face... Oh, I apologize. I misunderstood your question. Yes, the advertisement in the closed-circuit TV, the e-mails that go out to any member of the public who has signed up to receive these e-mails about state-sponsored events going on there, which include a list of the vendors that will be participating. This was akin to the concert program in the state's view. Yes. Is that right? Yes. Thank you. Thank you very much. Mr. Carpinello, you have two minutes rebuttal. Thank you, Your Honor. First, this is not a facial challenge to a regulation. In fact, we wouldn't know what regulation to challenge because there is no regulation. Tell us, if we were to agree with you on the discretion issue, what our decision should say, what our final line should be. The remedy should be an injunction in joining them from prohibiting the truck to participate on the plaza based upon their name. Secondly, I think the Tam case is relevant because in that case, the government argues, this is a government program. You can use the slants as a band if you want. All we're saying is, if you want to be in our government program and be listed on our register, which means it's our, like they're saying, it's our program, then we can discriminate. And I think the Federal Circuit rejected that clearly if for no other reason than even if it were the government program, it's blatant viewpoint discrimination. My adversary says that all ethnic slurs are prohibited. There's nothing in the record that even suggests that. In fact, if you want to look at the regulation that governs the use of state property for the public, please look at SPA 41, which lists the rules on which the commissioner can deny use of state property. There's not a single reference to speech, let alone racial speech. Even if they did expressly prohibit racial slurs, that is clear viewpoint discrimination. Not only does Tam say that, but the Supreme Court in Walker, the dissent in Walker said banning license plates that are offensive to the public is blatant viewpoint discrimination. And the majority didn't disagree. Could they prohibit the use of fighting words on a vendor's truck? I think fighting words are generally even prohibited in a quintessential public forum. I mean, they never made the argument that these are fighting words, and I don't think there's a case to support it. I think there was just a little testimony that Mr. Restivo gave about he would have punched someone in the mouth. Right, which clearly is not the test, because somebody wearing the jacket that uses the F word might get punched as well. And incidentally, this is not a content-based distinction. This is a viewpoint-based distinction. There's not a single case that suggests that what Mr. Rubito did was a content determination. It was clearly viewpoint. So even if you agree with my adversary that this is a limited public forum, a state-sponsored program, they cannot discriminate based upon viewpoint, and that's exactly what they did. How are you defining the viewpoint? The viewpoint was that he did not like the term Dago because he believed it was a slur on Italians. And that particular articulation, that viewpoint, was to him offensive and therefore should be prohibited, just as the state of Texas said the Confederate flag on a license plate is offensive. And there's no question that... This is not a situation where they're saying, okay, we will allow you to use it if we think it's complimentary, but we're not allowing you to use it if we think it's derogatory. That's the viewpoint issue. That's not what they're contending here. It's not that kind of dichotomy. They're just saying you can't use it. Well, respectfully, Judge, I have two answers. One, we have no idea what the position is because it's not articulated. They didn't say, they didn't say, there's no statement or policy that says Guido or Dago in a positive sense is okay but not in a negative sense. It was offensive. What would be the viewpoint discrimination? No, I think to say, to ban words that in the mind of the bureaucrat is offensive or may be offensive to a group... Well, there are certain words, though, that are clearly offensive. Under your theory, he couldn't ban any offensive. He can't... He cannot ban words that in his mind would be offensive to particular segments of the public. That's viewpoint discrimination. And, in fact, that's what RIV really says. The judge misread RIV entirely. Could you, if you clearly said, we will ban words which are ethnically offensive and that were being able to be done in a specific enough way so that we know what they are and don't have a problem having, but let's assume that we know what they are and say and we ban these whether they are positive or whether they are negative. Would that be viewpoint discrimination or content discrimination? I think it's clearly viewpoint discrimination. Because the... Why is the banning of words that are whether positively or negatively... Suppose you said in a thing, we will not allow any political statement of any sort, positive or negative. Is that viewpoint discrimination or content discrimination? If you said we will allow... What is content is, for example, the court has said commercial versus non-commercial is content. Well... If you said... Stay with me. I am. And if they said we'll allow certain non-commercial statements but not political, that's viewpoint discrimination. If they said we'll allow non-commercial but not political, I believe that's viewpoint discrimination. And if you say, for instance, in a school, we will not allow pro-religion or anti-religion to be discussed. Is that content or viewpoint? I think the Supreme Court has already said that's viewpoint. Maybe the court decided it on First Amendment establishment grounds. But I think... Yeah. You know, it's not an easy question. I will say that laying over all of this is the Reid decision where the Supreme Court said that seemed to be saying even in a non-public forum, even content distinctions are impermissible because in that case, the court said... And Justice Breyer, as a concurrence, said we're dealing with a not... We're not dealing with a public forum here. We're dealing with the public highways. And the court said when you put a different standard for travel signs versus other kinds of signs, that is content discrimination which is presumptively unconstitutional, not viewpoint but content. The Reid case is the most difficult. As many are. I think this is over an hour's worth of discussion but we ought to wrap it up. Thank you. Thank you, Your Honors. Thank you so much. Well argued. You both will reserve decision.